MORGAN D. KING Bar # 050887
Attorney & Counselor at Law
P.O. Box 2952
Dublin, CA 94568
Tel 925 829-6363
Fax 925 829-8724
Morgan@MorganKing.com
Attorney for Plaintiff Nancy Finley

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| NANCY H. FINLEY,<br><br>Plaintiff,<br><br>v.<br><br>DYNAMIC RECOVERY SOLUTIONS, ACCELERATED FINANCIAL SOLUTIONS, CONSUMER RECOVERY ASSOCIATES, LLC, ) and Does 1 through 10<br><br>Defendants | No: 3:14-cv-04028-TEH<br><br>PLAINTIFF'S REPLY TO MOTION FOR SUMMARY JUDGMENT BY CONSUMER RECOVERY ASSOCIATES AND PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES<br><br>Date June 1, 2015<br>Time: 10:00 a.m.<br>Courtroom: 2<br>Hon. Thelton E. Henderson |

The defendant, Consumer Recovery Associates, moves for summary judgment based principally on the ostensible application of the 1-year statute of limitations prescribed by both the Federal Fair Debt Collection Practices Act at 15 U.S.C. § 1692 and the California (Rosenthal) Fair Debt Collections Act at Civil Code §§ 1788-1788.32.

Although the argument has some merit, on balance the motion should be rejected, for reasons of law as well as fact. At the very least, the motion should be continued for 90 - 120 days in order for the Plaintiff to do such additional discovery as may be appropriate, and file an amended complaint to encompass the relevant facts.

Exhibits offered in support of this reply include:

**INDEX OF EXHIBITS**

A. Undated letter from Consumer Recovery Associates to Plaintiff

B. Plaintiff's attorney's reply letter dated April 29, 2010

C. Consumer Recovery Associates single-page transcript of account

D. Letter from Plaintiff counsel to Consumer Recovery Assoc. dated May 11, 2010

E. Letter from Plaintiff counsel to Consumer Recovery Assoc. dated July 2012

F. Letter from Plaintiff counsel to Consumer Recovery Assoc. dated Feb. 5, 2013

G. Collection letter from Dynamic to Plaintiff dated May 7, 2014

H. Letter from Plaintiff counsel to Dynamic Recovery Solutions dated June 4 2014

I. Record of account from Dynamic Recovery Solutions

**TABLE OF CASES CITED**

*Addison v. State of California* (1978) 21 Cal.3d 313 .......... 15

*Aguilera v. Heiman* (2009) 174 Cal.App.4th 590, 95 Cal.Rptr.3d.......... 14

*Alborzian v. JPMorgan Chase* Cal.App2d 2015); .......... 12

*Assheen Alborzian v. JPMorgan Chase Bank*, 2d Appellate District (March 12, 2015)...... 12

*Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 151, 104 S.Ct. 1723 .......... 14

*Collier v. City of Pasadena*, (1983) 191 Cal.Rptr. 681 .......... 14

*Dibb v. Allianceone Receivables Mgmt., Inc.* (W.D. Wash., 2015) .......... 12

*Donald v. Cook County Sheriff's Dept.,* 95 F.3d 548, 561 (7th Cir.1996).......... 14

*Dorsey v. David B. Schumacher, P.C.* (D. Or., 2015). .......... 12, 17

*Elkins v. Derby* (1974) 12 Cal.3d 410, 115 Cal.Rptr. 641. .......... 14

*Gonzales v. Arrow Fin. Servs. LLC,* (9th Cir. 2011) 660 F.3d 1055.......... 12

*Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96 (1990).......... 14

*Kniley v. Citibank, N.A.* (N.D. Cal., 2015).......... 16

*Magrin v. Unifund CCR Partners, Inc.*, 52 F. App'x 938, 939 (9th Cir. 2002) .......... 13

*Mangum v. Action Collection Serv., Inc.*, 575 F.3d.......... 12, 16

*McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88.......... 14

*McNair v. Maxwell & Morgan PC* (D. Ariz., 2014), .......... 18

*Plummer v. Atl. Credit &F Fin, Inc.* (S.D.N.Y. 2014). .......... 13

*Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006).......... 13

*Self Directed Placement Corp. v. Control Data Corp.,* 908 F.2d 462 (C.A.9 (Cal.), 1990) .. 4

*Singletary v. Cont'l Illinois Nat'l Bank and Trust Co. of Chicago,* 9 F.3d 1236, 1241 (7th Cir.1993)). .......... 14

*Supermail Cargo, Inc. v. U.S.*, 68 F.3d 1204, 1207 (9th Cir. 1995) .......... 18

*Tostado v. Rehabbers Fin., Inc.* (Cal. App., 2013).......... 16

*Wilson v. Gordon & Wong Law Grp., P.C.* (E.D. Cal., 2013). .......... 13

## I. SUMMARY

The Defendant admits that the most recent contact, and hence ostensibly the most recent violation of the Fair Debt Collection Practices Act, was sometime in 2010; hence, they argue, the Plaintiff's complaint filed in 2014 alleging events that occurred in 2010, is beyond the 1-year statute of limitations for such actions prescribed by statute at 15 U.S.C. § 1692k(d).

However, violations of the FDCPA are not limited to communications between a debt collector and the consumer. The FDCPA defines "communicate" as " … the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692(a)(2).

And as explained below, the Defendant violated the Act in ways both within and beyond the 1-year statutory period without notifying the Plaintiff, and in a manner to render the 1-year limitations period inapplicable.

Principal among her arguments are the doctrines of "equitable tolling" and "continuing wrong," addressed below at Argument.

## II. PLAINTIFF'S ALLEGATIONS

In addressing whether or not the FDCPA statute of limitations bars the Plaintiff Nancy Finley from commencing an action against Defendant Consumer Recovery Associates, it is necessary to have facts before the Court that are not currently, explicitly addressed in Plaintiff's Complaint.

In her complaint the Plaintiff alleged, *inter alia*, that the defendant Consumer Recovery Associates, "On a date unknown in 2009 or 2010 … sent an undated collection letter demanding $32,593," and at a date "sometime in April, 2010, sent another undated collection letter demanding $32,593." (Exhibit A). However, not all of Defendant's violations are described in the complaint,[1] and to the extent necessary, Plaintiff is amenable to filing a first amended complaint after further discovery.

[1] The purpose of the complaint is not to allege every fact bearing on the issues, but only to put the defendant on fair notice of the general nature of the action. *Self Directed Placement Corp. v. Control Data Corp.,* 908 F.2d 462 (C.A.9 (Cal.), 1990).

Additional facts relevant to the issue are that Consumer Recovery Associates sending of its undated letter (Exhibit A) to the Plaintiff sometime in 2010, the content of which constitutes a violation of FDCPA § 1692e(1) (failure to acknowledge "legal status," *i.e.* expiration of limitations on suits to collect), Defendant also failed to communicate that the Plaintiff had previously disputed the debt in previous correspondence to predecessor debt collectors. And, it appears that CRA did not provide the information that the Plaintiff had requested in her attorney' that all communications be directed to her attorney. (Exhibit B). Under the FDCPA, § 1692g(b), the debt collector is required to provide verification of the debt, or a copy of a judgment and a copy mailed to the consumer. Defendant did not comply with this requirement (Declaration of Nancy Finley). Defendant appears to allege that upon receipt of the Plaintiff's April 10 2010 letter Defendant placed the matter in a "cease and desist" status, on May 4, 2010 (Exhibit C and Declaration of James Fox[2])

However, either before or following the "cease and desist" event the Defendant in some manner forwarded, sold, gave, assigned, "placed" or otherwise transferred the account into the possession of the next-in-line Defendant, whose identity is not disclosed but was probably Accelerated Financial Services, dba Dynamic Recovery Solutions, without including any evidence of the legal status of the debt, in violation of FDCPA § 1692e(1).

In addition, by not communicating to Accelerated Financial Services, dba Dynamic Recovery Solutions, that Plaintiff disputed the debt, Defendant violated FDCPA § 1692e(8) which prohibits debt collectors from failing to "communicate … to any person credit information … including the failure to communicate that the debt is disputed."

Furthermore, by transferring the debt account, or allowing it to be transferred, to Accelerated Financial Services, dba Dynamic Recovery Solutions, without indicating in the information transferred with the account that the statute of limitations for commencing a lawsuit against the debtor to collect the debt, had expired, Defendant violated FDCPA § 1692e(2)(A) by misrepresenting the "legal status" of the claim, to wit, the expiration of the statute of limitations, to a third party.

And, it appears that CRA transferred the account without the information that the Plaintiff had demanded, on April 29, 2010, that all future communications be directed to her attorney.

---

[2] Plaintiff requests the court to take judicial notice of Fox declaration).

## III. DEFENDANT'S FACTS ARE INCOMPLETE OR FALSE

In support of its motion for summary judgment, the defendant alleges that the contact between the Plaintiff and Defendant consisted only of a letter sent by the Defendant to Plaintiff dated April 12 2010 (Exhibit A)[3] "… but otherwise did not communicate or attempt to communicate with Ms. Finley." Declaration of James Fox, paragraphs 5 through 6.

Mr. Fox either lacks actual personal knowledge of the facts, or is at best, disingenuous.

### A. "OWNERSHIP" OF THE ACCOUNT

Defendant's declaration of James Fox in support of its motion for summary judgment states "… at no time did CRA buy, sell, or have any ownership interest in the identified account." However, the original, undated letter sent by Consumer Recovery Associates to the Plaintiff on or about April 12 2010 (Exhibit A) states unequivocally that "Consumer Recovery Associates, LLC, (CRA) is the legal owner of the above referenced account." Subsequently, the Plaintiff received the letter dated May 7, 2014, on Dynamic Recovery Solutions /Accelerated Financial Solutions letterhead, containing the statement "Current Owner: Accelerated Financial Solutions." A credible inference that may be drawn is that in some manner CRA owned the account at one point, then sold, gave, sent, faxed, or otherwise transferred ownership of the account to Dynamic Recovery Associates and/or Accelerated Financial Solutions ("Dynamic").

### B. MOST RECENT VIOLATION CONCEALED FROM PLAINTIFF

Inasmuch as the letter sent by Dynamic to the Plaintiff on May 7, 2014 did not acknowledge that the 4-year California statute of limitations had expired, or that the Plaintiff disputed the debt, a reasonable inference may be drawn that Consumer Recovery Associates failed to communicate this information when it transferred its account to

[3] The actual letter, Exhibit A, is undated, but the letter referenced by Mr. Fox appears to be the same letter, and he gives it a date of April 12, 2010.

Dynamic. Hence, CRA violated the FDCPA, by transferring ownership of the account and failing to communicate to the new owner the account's legal status, namely that the statute of limitation has expired (FDCPA § 1692e(8)), or that the debt is disputed (FDCPA § 1692e(2)(A)).

## C. CONTACTS IN 2010

Contacts between Defendant and Plaintiff consisted of the following:

1. Sometime in March, 2010, CRA left several telephonic messages demanding payment. Caller used "rude" and "demanding" tone of voice. Declaration of Nancy Finley.

2. Sometime in April, 2010, Plaintiff received an undated letter (Exhibit A) from Defendant Consumer Recovery Associates ("CRA") stating "Balance: $32,593.29." It ascribed an "account number." The letter said, among other things, "The principal balance reflected above is the amount currently owed to CRA." It suggests a "payment arrangement" and " … direct all future payments and inquiries to Consumer Recovery Associates, LLC …" and the address. On the reverse in small print is a threat to report the matter on the Plaintiff's credit report "If you fail to fulfill the terms of your credit obligations." But CRA " … will not submit a negative credit report to a credit reporting agency about this credit obligation until the expiration of the time period described on the front of this letter." The front of the letter gives Plaintiff 30 days after receiving the notice in which to comply, or dispute the debt. The letter states "This communication is from a debt collector and is an attempt to collect a debt."

payment. See declaration of Nancy Finley. Subsequently, it appears that the date that it was mailed was April 12, 2010.[4]

3. On April 29, 2010, within 30 days of the receipt of the demand letter, Plaintiff's counsel wrote a letter to CRA by certified mail, with a copy to agent James G. Foxx and counsel Donald S. Burak. See Declaration of Morgan D. King. The letter notified the defendant that the plaintiff did not owe the debt, that the California statute of limitations on commencing litigation of such debts had expired, that defendant is instructed to direct all future communications to plaintiff's attorney, demanded damages, and warned defendant

[4] Declaration of James Fox, page 2, paragraph 5.

that unless CRA responded to her letter in a timely manner, Plaintiff was "prepared to proceed with civil proceedings, seeking actual damages," etc.

On May 11, 2010 Plaintiff's counsel sent a follow-up letter again requesting documentation for the alleged debt.

On July 10, 2012 Plaintiff's counsel sent a follow up letter again requesting documentation for the alleged debt, or in the alternative, damages of $25,000.

On February 5, 2013, Plaintiff's counsel again sent a follow-up letter begging some reply from the Defendant, and suggesting Plaintiff may have to "review other options in this matter if you remain silent."

Notwithstanding this correspondence, defendant, in violation of the Fair Debt Collection Practices Act, continued to communicate its intention to collect the debt, including a June 8, 2010 telephone message from a "Mr. Sessions."[5] In the message no offer of settlement was suggested.

4. On May 11 2010, Plaintiff's counsel received a call from an attorney, Michelle Lyon, representing that she was counsel for CRA, in connection with the undated April demand letter. In the conversation, Ms. Lyon argued that the California statute of limitations had not expired, and that her client still had the right to sue plaintiff to collect the alleged debt. She was unable to support her statement with law or fact.

5. On May 11, 2010, Plaintiff's counsel made a follow-up call to Michelle Lyon by phone, and discussed the undated April letter.

6. On May 11, 2010 Plaintiff sent letter to CRA (Exhibit D)

7. May 11, 2010, Defendant's legal counsel called Plaintiff and left a message.

8. On May 12, 2010 Counsel again contacted Michelle Lyon, who said she would get back to us.

9. On May 13, 2010 again conferred by phone with Michelle Lyon.

10. Again on May 13, 2010 telephone conference, no results.

11. On May 24, 2010, Counsel left a message with Michelle Lyon.

12. On May 25, 2010, another message left with Michelle Lyon.

13. On May 26, 2010, telephone message from Ms. Lyon returning my call.

14. On May 26 2010 counsel again left a message with Ms. Lyon.

[5] The "Sessions" who made the call appears to be counsel for CRA now, as well as then.

15. On June 8, 2010 counsel received a message from a "Mr. Sessions" on behalf of M. Lyon. Counsel also faxed to same a copy of the April 29 letter counsel previously sent to CRA.[6]

16. The April 29, 2010, letter was faxed again to CRA on November 12, 2010, March 5, 2011, August 19 2011, November 14 2011, and February 3, 2012.

17. On July 10, 2012 plaintiff sent a letter to CRA (Exhibit E).

18. On February 5, 2013 plaintiff's final letter to CRA (Exhibit F).

19. In May 2014 Defendant Dynamic Recovery Solutions sent to the Plaintiff a letter dated May 7 2014 suggesting "settlement" without disclosure that the statute to commence civil action to collect the alleged debt had expired. The same letter was not sent to Plaintiff's legal counsel..

## D. OWNERSHIP OF THE ACCOUNT

In his declaration filed in support of their motion for summary judgment, the alleged President of CRA, James Fox, declares unequivocally that " … at no time did CRA buy, sell, or have any ownership interest in the identified account."[7] The evidence is otherwise. The undated letter that plaintiff received from CRA in 2010, states unequivocally "Consumer Recovery Associates, LLC (CRA) is the legal owner of the above referenced account." The "above referenced account" is identified on the undated letter as originating from First U.S.A. referenced number 5417122595671403, CRA Account # 399278, showing a balance owed of $32,593.29. This appears to be the same "account" that is the subject of the herein litigation.

According to the web site for CRA, ConsumerRecovery.com, one of the principal services offered by Defendant is "Debt Purchasing and Sales."

[6] This Mr. Sessions was later determined to be CRA counsel in 2014, as well, as that firm filed an answer to Plaintiff's complaint.

[7] Declaration, page 3, paragraph 7.

**E. CLAIM OF "CEASE AND DESIST" IS ILLUSORY**

Defendant's president claims in his declaration that upon receipt of Plaintiff's counsel's letter dated May 4, 2010, it placed the account in "Cease and Desist status" and that it subsequently "closed" the account on their "system." This is a lie, or at best disingenuous. Despite ostensibly placing the account in "Cease and Desist," that act, if true, obviously did not mean they wouldn't sell or otherwise assign or transfer the account to yet another debt buyer/collector, which subsequently commenced its own pattern of harassment.

And, presumably, CRA made a profit on the sale.

But even more important, the Defendant never notified the Plaintiff that the account had been placed in "Cease and Desist" status. Hence, the Plaintiff had no way of knowing about the "Cease and Desist" status, or that the account had been sold or otherwise transferred to another debt collector.

Under developing case law in the 9th Circuit, these facts act to suspend the running of the statute of limitations for commencement of civil action based on violation of the FDCPA. See Argument, *infra*.

The Fundamental problem is in the fact that the account appears to have has passed through the hands of no less than 10 debt collection entities, commencing July of 2001 until May 7, 2014. (Complaint, pages 3 through 5).

The pattern appears to be, each debt collector in order makes an attempt to collect the debt, and then at some date unknown to Plaintiff the account gets handed off to the next Debt Collector down the line.

If the Defendant, hiding behind a statute of limitations and claiming that the account was placed in a "Cease and Desist" category, is not liable for violations of the FDCPA that continue in effect or occur each time the account is transferred, then Plaintiff faces the same abuse in perpetuity … the rest of her life. <u>Each respective debt collector can send her a demand letter, and having been rebuffed in that effort, sell the account to the next debt collector down the line. Plaintiff does not believe that such an easy escape route is sanctioned by the FDCPA in light of its stated purposes.</u>

In response to Plaintiff's request for production of documents in connection with this lawsuit, Defendant CRA provided the grand total of 1 document, and pleaded all other

requests were too vague to comply with. The single – page document produced by CRA (**Exhibit C**) contains the statement "04/2010 28 Kalin Changed status Code to CED Cease Desist."

So, it would appear that, at least on or about that date, the matter is settled. Yet, despite CRA putting, or claiming to put, the account into a "Cease and Desist" status, the Plaintiff was somehow subject to debt collection efforts by two subsequent additional debt collectors (Accelerated Financial Solutions, dba Dynamic Recovery Solutions).[8] And the collection letter she received from Dynamic (**Exhibit G**) failed to disclose that the 4-year statute had long expired, or that the Plaintiff disputed the debt, and did not comply with Plaintiff's April 29 2010 demand that all future communications be directed to her attorney.

In reply to Plaintiff's request for production of documents, Defendant Dynamic Recovery Solutions represents that account was not purchased, but does indicate that the account was "placed" with them by Defendant Accelerated Financial Services (**Exhibit C**) page 5, response no. 2).[9] In addition, Defendant Dynamic Recovery Solutions produced a mult-page document that appears to be an in-house history of activity on the account (**Exhibit I.**). The document does not clearly indicate when or from whom they received the account, but the document dates of activity begin with February 4, 2014 (see top entry on the second page of the exhibit). The document indicates that Defendant Dynamic Recovery Solutions made numerous telephone calls to the Plaintiff's phone number, to wit, 03/08/2014, 03/12/2014, 03/19/2014, 03/26/2014, 04/16/2014, 04/18/2014, 04/18/2014, and 04/19/2014, a total of 8 calls over a period of approximately 5 weeks.[10]

More importantly, however, it appears to indicate in several places that on the same date they received service of the herein lawsuit, June 10, 2014,[11] they "sold" the account

---

[8] The Plaintiff is alarmed that the document produced by CRA contains her full social security number. If this document becomes public record without redaction, in this day of identity theft she may suffer additional harm. Plaintiff has redacted her SSN from her copy of the exhibit.

[9] Plaintiff's original request for production of documents was directed only to Dynamic Solutions Recovery. Plaintiff has, or will, direct the same request to Defendant Accelerated Financial Solutions.

[10] Alarmingly, the same entry date contains the words "Equifax Credit." Plaintiff is concerned that this may indicate her "account" was reported to Equifax Credit.

[11] The same document also shows "Lawsuit received" on 08/08/2014. It is unclear whether the two different dates refer to the same lawsuit, or different lawsuits.,

but does not indicate to whom it was "sold." (**Exhibit I.)**[12] The obvious significance that the Plaintiff infers from these facts is that it doesn't seem to matter that one collector will cease collection when in fact all they do is sell it to another collector. And apparently without disclosure of legal status or of the dispute. *In perpetuity*.

## F. CRA STILL NOT IN COMPLIANCE WITH FCDPA

In his letter to CRA dated April 29, 2010, Counsel unequivocally stated that his client did not owe the alleged debt, and demanded a monetary settlement, and that " … if you elect rather to disregard this demand, we will … deem your conduct to be your admission of liability." The same letter was sent again on May 11, 2010 (**Exhibit D**), July 10, 2012 (**Exhibit E**), and again February 5, 2013 (**Exhibit F**).

CRA never replied to this demand, or in any other manner produced any documentation, or reply in any way whatever to this correspondence, and never produced any documentation to support the debt.

Subsequently, Plaintiff is informed and believes that CRA transferred her "account" to yet another "debt collector," namely to Accelerated Financial Solutions, dba Dynamic Recovery Solutions, sometime in late 2013 or early 2014.[13]

Subsequently, defendant Accelerated Financial Solutions, dba Dynamic Recovery Solutions, commenced the harassment anew, starting with phone calls, followed by letters suggesting "compromise" without acknowledging that the statute of limitation had expired.

It appears that whatever information Accelerated Financial Solutions, dba Dynamic Recovery Solutions, received about the account did not include the April 10 2010 correspondence or any of its repeated mailings, or information that the statute of limitations had expired long ago.

[12] The exhibits show Plaintiff's full social security number; since this reply, with exhibits, will probably be entered in the public records, Plaintiff's counsel has redacted those numbers except for the last 4 digits.

[13] Presumably, in 2010 CRA was relying on legal advice from its law firm, Sessions – Fishman – Nathan et al. – from which Plaintiff infers that the firm did not advise CRA that transferring the account with FDCPA violations might subject it to liability.

## III. ARGUMENT

### A. THE PURPOSE OF THE FDCPA

With regard to the legislative purposes behind adoption of the FDCPA the court in *Dibb v. Allianceone Receivables Mgmt., Inc*. (W.D. Wash., 2015) stated:

"The FDCPA was enacted as a broad remedial statute designed to 'eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1060 (9th Cir. 2011)(*quoting* 15 U.S.C. § 1692(e)). The FDCPA provides that claims must be filed "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Due to the remedial nature of the FDCPA, the Ninth Circuit applies the discovery rule to FDCPA claims, holding that the "limitations period begins to run when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Mangum v. Action Collection Serv., Inc*., 575 F.3d 935, 940 (9th Cir. 2009); *Dorsey v. David B. Schumacher, P.C.* (D. Or., 2015).

Whether a debt collection effort entails false representations, threats, or deception is judged objectively from the perspective of the "least sophisticated debtor." *Gonzales v. Arrow Fin. Servs. LLC,* (9th Cir. 2011) 660 F.3d 1055, 1061-1062. What is implied is just as important as what is stated. *Assheen Alborzian v. JPMorgan Chase Bank*, 2d Appellate District (March 12, 2015).

The FDCPA requires that debt collector not fail to disclose to another debt collector - buyer the legal status of a debt[14], *Alborzian v. JPMorgan Chase* Cal.App2d 2015); or fail to mention that it is disputed[15], or fail to disclose that the consumer has directed all communications to the debtor's legal counsel[16].

[14] FDCPA § 1692e(2)(A).

[15] FDCPA § 1692e(8), and § 1692g(b).

[16] FDCPA § 1692c(a)(2)

In connection with the sale or transfer of an account to another debt buyer, the Court in *Plummer v. Atl. Credit &F Fin, Inc*. explained:

> "The FDCPA contains a general prohibition against "any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, as well as a broad definition of "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium," § 1692a(2). In light of the clear language of the statute, the complaint plausibly alleges that Velocity, in placing Plaintiff's debt with Capital Management, made communications concerning Plaintiff's debt that fall within the scope of the FDCPA. The Ninth Circuit has addressed precisely this situation:
>
> > '[A] consumer states a valid claim for relief under the [FDCPA] when he alleges that a debt collector has made false representations as to the legal status of a debt in connection with the sale, transfer or assignment of a debt to another debt collector, with the knowledge that the purchaser, transferee or assignee intends to initiate or continue attempts to collect the debt.'"

*Plummer v. Atl. Credit &F Fin, Inc.* (S.D.N.Y. 2014). The Plummer opinion cited *Magrin v. Unifund CCR Partners, Inc*., 52 F. App'x 938, 939 (9th Cir. 2002) (summary order) as authority in the 9th Circuit.

**2. EQUITABLE TOLLING NULLIFIES THE STATUTE OF LIMITATIONS**

a. Statute of limitations

The defendant has asserted an obvious issue … the one-year statute of limitations prescribed by FDCPA ostensibly protecting it from litigation.

The application of the statute of limitations is more nuanced than the Defendant would have the court believe. In this case the 1-year statute does not protect the defendant.

A statute of limitations is intended to protect tort-feasors or other offenders from potential plaintiffs who have "slept on their rights" without justification, until the potential defendant is prejudiced due to loss of witnesses and other evidence.

b. Equitable tolling

In this case the statute of limitations was suspended under the doctrine of equitable tolling.

The Ninth Circuit has held that equitable tolling is applicable to the FDCPA. *Mangum v. Action Collection Serv., Inc.,* 575 F.3d 935, 940 (9th Cir. 2009); *Wilson v. Gordon &*

*Wong Law Grp., P.C.* (E.D. Cal., 2013). The Mangum court also ruled that any issue of subject matter jurisdiction did not apply in FDCPA cases.

Under the *equitable tolling* principle, the statute of limitations cannot be used as a shield against unlawful conduct, where the defendant was on notice of potential civil action within the statutory period, <u>or the nature of the violation was not apparent to the plaintiff until after the limitations period has expired</u>. Equitable tolling has been invoked that when the plaintiff could not reasonably be expected to perceive the alleged violation before the limitations period has run, or when the violation only becomes apparent in light of later events." *Savory v. Lyons,* 469 F.3d 667, 672 (7th Cir. 2006).

Equitable tolling has been invoked where, among other reasons, "… the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96 (1990).

These acts of CRA could be deemed "continuing wrongs" as recent as May 7, 1914, because they were never corrected. But an even more logical inference that we may draw is that Plaintiff was unaware that CRA had transferred the account, and <u>hence the statute of limitations in effect continued into 2014</u>; the Plaintiff filed her lawsuit soon after receiving the May 7, 2014 letter from the new owner of the account.

"This court has applied the continuing violation doctrine when the plaintiff could not reasonably be expected to perceive the alleged violation before the limitations period has run, or when the violation only becomes apparent in light of later events.") *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006).

The 7th Circuit, in *Savory v. Lyons,* explained the theory:

"Equitable tolling of the statute of limitations "permits a plaintiff to sue after the statute of limitations has expired if through no fault or lack of diligence on his part he was unable to sue before, even though the defendant took no active steps to prevent him from suing." *Donald v. Cook County Sheriff's Dept.,* 95 F.3d 548, 561 (7th Cir.1996) (quoting *Singletary v. Cont'l Illinois Nat'l Bank and Trust Co. of Chicago,* 9 F.3d 1236, 1241 (7th Cir.1993)). Such may be the case if the plaintiff is unable to determine who caused his injury, has received inadequate notice, or if the appointment of counsel is pending. *Donald,* 95 F.3d at 562 (citing *Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 151, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984))." *Lyons,* at 673.

As *Savory v. Lyons* states it the language " … the violation only becomes apparent in light of later events" describes precisely what happened in this case.

This rule, invoking equitable tolling, is employed under California State law as well as Federal. "The primary purpose of the statute of limitations is normally satisfied when the defendant receives timely notification …" *Aguilera v. Heiman* (2009) 174 Cal.App.4th 590, 95 Cal.Rptr.3d 18, *McDonald v. Antelope Valley Community College Dist*. (2008) 45 Cal.4th 88, 84 CalRpte.3d 734, 12 Cal3d at 417; *Collier v. City of Pasadena*, (1983) 191 Cal.Rptr. 681, 142 Cal.App.3d 917. The California Supreme Court invoked the doctrine of equitable tolling beginning in 1974. *Elkins v. Derby* (1974) 12 Cal.3d 410, 115 Cal.Rptr. 641.

The case of *Addison v. State of California* (1978) 21 Cal.3d 313, 142 Cal.App.3d 924 identified a criterion for applying equitable tolling, consisting of three prongs:

- timely notice to the defendant in filing the first claim;
- lack of prejudice to defendant in gathering evidence to defend itself;
- good faith and reasonable conduct by the plaintiff in filing the second (i.e., post-statute) claim.

Plaintiff's position is that she satisfies all three prongs.

1) Plaintiff's letter dated April 10, 2010 gave clear and emphatic notice that unless they replied to settle the matter, a lawsuit would be coming;

2) the defendant, CRA, is able to present all relevant evidence in its defense;

3) Plaintiff acted in good faith by repeating her warning several times, both inside and outside the 1-year statutory period, but nevertheless held back from rushing into litigation, giving defendant repeated opportunities to reach out to the plaintiff and address her grievance.

The Addison and Collier cases are not entirely congruent with the facts in plaintiff's case, but in principal the prongs asserted in those cases apply perfectly with her case.

The Addison opinion explained the benefit of timely notice, to the effect that the notice given within the statutory period must alert defendant of the need to begin investigating the facts. Plaintiff's repeated warnings and invitation to settle certainly should have alerted CRA to investigate the facts and address the problem. But CRA's only reply was to pass the alleged claim onto yet another debt collector, who started the whole process against Plaintiff all over again.

In this case, none of the communications from the Defendant to the Plaintiff falling within the 1 year period from Defendant's first violation included the violation of selling or otherwise transferring the account to Dynamic Recovery Solutions. The Plaintiff had no reason to believe that a debt collector could still come after her when she received no further dunning calls or letters from CRA, until she received the May 7 2014 letter from Dynamic Recovery Solutions. Under the law, failing to explain such information of an account to any person encompasses CRA's apparent failure to notify the next debt collector down the road (Dynamic). The problem of one collector forwarding an account to another collector without including relevant information is a major problem in the debt collection industry. "During a debt sale, buyers often receive insufficient and inaccurate information about the debts they purchase. As a result, it is not too surprising that buyers pursue debts that may be time-barred, …"[17] " … buyers often direct their collection efforts at unenforceable debts, including debts … for which the limitations period on any collection claim has expired."[18]

In any event, the Plaintiff was unaware of that CRA FCDPA violation until she received Dynamic's letter dated May 7, 2014 that failed to reflect her dispute, the expiration of the statute of limitations, or the demand to direct notice to her attorney.

"In particular, the plaintiff must plead "the time and manner of discovery" and "the inability to have made earlier discovery despite reasonable diligence." Generally, a limitations period begins to run "'upon the occurrence of the last fact essential to the cause of action.' However, where a tort involves a continuing wrong, the statute of limitations does not begin to run until the date of the last injury or when the tortious acts cease." *Tostado v. Rehabbers Fin., Inc.* (Cal. App., 2013).

In this case, the time and manner of discovery are simple; there being no reply from CRA for several years of Plaintiff's attorney sending letters, the Plaintiff very plausibly believed it was finally a dead issue and did not suspect that the alleged debt would come back again to bite her until she received the Dynamic letter.

The 9th Circuit has held that this rule, which it calls the discovery rule, applies in FDCPA cases. *Mangum v. Action Collection Service, Inc.*

---

[17] Neil I. Sobol, Assoc. Professor, Texas A & M School of Law, *Protecting Consumers From Zombie Debt Collectors*, at 345.
[18] Sobol, at 331.

Subsequent cases have applied the same rule in FDCPA cases: "The issue is whether the statute of limitations should be equitably tolled. Our court of appeals has held that in an FDCPA claim, the statute of limitations "begins to run when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Kniley v. Citibank, N.A*. (N.D. Cal., 2015).

Hence, the equitable tolling rule as well as the separate theory of "continuing wrong" apply in this case to invalidate the statute of limitations defense.

It must be kept in mind that it is not so much the original CRA violations consisting of sending her the letter that failed to disclose that the 4-year statute of limitations had expired, as the subsequent failure to include this information - as well as the fact the debt was disputed and that Plaintiff had directed all communications to her attorney – to the next debt collector down the road. This act may have occurred at any time after the last contact between CRA and the Plaintiff. In other words, she is looking not so much back to 2010, but rather to more recent violations of transferring the account in a manner that violates the FDCPA. And, although it can be argued that the one-year statute of limitations may apply to CRA's original 2010 collection efforts, which Plaintiff of course was aware of, it cannot be argued that the statute applies to the subsequent act of transferring the account to another debt collector in violation of the FDCPA, because she was not put on notice of that event until she received Dynamic's letter of May 7, 2014.

In connection of the notice rule, Plaintiff's case is very similar to the facts in *Dorsey v. David B. Schumacher, P.C.* (D. Or., 2015):

"Here, because Plaintiff never received the 2007 mailing, he never knew of his injury. Moreover, Plaintiff's complaint, filed in July 2014, is limited to Defendant's actions "[w]ithin the past year." Plaintiff's complaint therefore refers not to Defendant's 2007 mailing, but to Defendant's 2013 mailings, with respect to which Plaintiff's claims are not time-barred."

Plaintiff finds it ironic that after ignoring the 4-year statute of limitations for commencing a suit against a consumer to collect on a debt, the same party now seeks to hide behind the 1-year statute.

## IV. CONCLUSION

Collectors often pursue time-barred claims. One commentator has suggested that "time-barred debt is where the worst abuse has occurred towards the debtor."[19]

It should be apparent based on the Plaintiff's posture in the case as laid out above, that any ruling on the Defendant's motion for summary judgment should be, at the least, continued until discovery in the case is allowed to take its course. This would allow the Plaintiff to explore when and how the "account" apparently went from CRA to Dynamic, and the nature of any documents or other communications between the two, or other, debt collectors.

As set forth in *McNair v. Maxwell & Morgan PC* (D. Ariz., 2014), "A motion to dismiss based on the running of the statute of limitations may be granted only if it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim. *Supermail Cargo, Inc. v. U.S.*, 68 F.3d 1204, 1207 (9th Cir. 1995) (citations omitted). To determine when a limitations period began to run, the Court must apply the discovery rule. "Federal law determines when the limitations period begins to run, and the general federal rule is that a limitations period begins to run when the plaintiff knows or has reason to know of the injury which is the basis of the action."

Dated: ____04/28/2015_________ _____/s/________________________________

Morgan D. King
Attorney for Plaintiff Nancy Finley
Law Offices of Morgan D. King
11501 Dublin Blvd
Dublin, CA 94568
morgan@morganking.com
TEL 925 829-6363
FAX 925 829-8724

[19] Andrew Martin, *Old Debts that Won't Die*, N.Y. Times, July 30, 2010

Finley v. Dynamic et al – Plaintiff's reply to CRA motion for summary judgment

19

Finley v. Dynamic et al – Plaintiff's reply to CRA motion for summary judgment