MORGAN D. KING Bar # 050887
Attorney & Counselor at Law
P.O. Box 2952
Dublin, CA 94568
Tel 925 829-6363
Fax 925 829-8724
Morgan@MorganKing.com
Attorney for Plaintiff Nancy Finley

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF California

SAN FRANCISCO DIVISION

| | |
|---|---|
| NANCY H. FINLEY, <br><br> Plaintiff, <br><br> v. <br><br> DYNAMIC RECOVERY SOLUTIONS, ACCELERATED FINANCIAL SOLUTIONS, CONSUMER RECOVERY ASSOCIATES, LLC,  and Does 1 through 10 <br><br> Defendants | No: 3:14-cv-04028-TEH <br><br> **PLAINTIFF'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT BY ACCELERATED FINANCIAL SOLUTIONS** <br><br> Date: June 8 2015 <br> Time: 10:00 a.m. <br> Courtroom: 2 <br> Hon. Thelton E. Henderson |

## CASES CITED

*Canham v. Fair Collection & Outsourcing*, _ (N.D. Ill. 2014) ......................................................11
*Clark v. Capital Credit & Collection Serv.*, 460 F.3d 1162 (9th Cir., 2006).................................7
*Clark v. Capital Credit & Collection Servs., Inc.,* 460 F.3d 1162, 1177 (9th Cir. 2006). .............8
*Elde v. Colltech* 987 F. Supp. 2d 951 (D. Minn. 2013). ...........................................................11
*Engelen v. Erin Capital Mgmt., LLC* (9th Cir., 2013) ..................................................................8
*McCollough v. Johnson* 637 F.3d 939 (9th Cir. 2011). ...........................................................11
*Mueller v. Auker*, 576 F.3d 979 (9th Cir., 2009). .......................................................................10
*Reichert v. National Credit Systems, Inc.* 531 F.3d 1002 (9th Cir. 2008).........................7, 8, 11

### NOTE

Because many of the legal issues and facts that apply in this case are to some extent duplicated and overlap the other two defendants' cases, in the interest of efficiency the Plaintiff incorporates herein by reference the information and statements contained in her declarations, and including law and case citations expressed in her Memorandum in Response to Motion for

- 1 –

Summary Judgment by Consumer Recovery Associates and Dynamic Recovery Solutions, as well as the factual representations contained in her Declarations filed in support of her opposition to the Consumer Recovery Associates' and Dynamic Recovery Associates' motions.

## INTRODUCTION

Defendant Accelerated Financial Solutions ("AFS") moves for summary judgment based on, apparently, a "Bona Fide Error" defense and AFS' ostensible lack of "actual knowledge" of the status of Plaintiff's alleged debt account. The Defendant's theory, basically the same as that invoked by Dynamic in its motion for summary judgment, is that to be liable under the FDCPA the defendant AFS must have had "actual knowledge" of the legal status of the account, including, presumably, the expiration of the <u>statute of limitations</u> for collection of the debt, the Plaintiff's notice to direct all communications to <u>her attorney</u>, the fact that the debt was <u>disputed</u>, and the explicit threat that the Defendant could and would place a negative item on the Plaintiff's <u>credit report</u> notwithstanding that the limitations period of 7 years <u>had expired</u>.[1]

## ARGUMENT
## THE STATUS OF AFS
## I. IS AFS A DEBT "COLLECTOR"?

Among other defenses raised in its memorandum in support of its motion for summary judgment, AFS argues that it is not a "debt collector" within the meaning of the FDCPA. However, AFS admits it "purchased" the debt on or about January 15, 2014, and "placed" the account with Dynamic, presumably for collection, on or about January 27, 2014. The Federal FDCPA defines a "debt collector" at 15 U.S.C. § 1692(a)(6):

> "The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."

The definition of a "debt collector" under the California Fair Debt Collections Practices Act defines it in a similar fashion, Cal.Civ. Code §1788.2(c):

> (c) The term "debt collector" means any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection. The term includes any person who composes and sells, or offers to

---

[1] The credit report issue, addressed below, is a recently identified matter that will appear in an Amended Complaint by the Plaintiff.

- 2 –

compose and sell, forms, letters, and other collection media used or intended to be used for debt collection, but does not include an attorney or counselor at law.

Under either definition the defendant AFS is a debt collector.

The Federal Act defines a debt collector –

"The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."[2]

The AFS web site, http://www.acceleratedfinancial.net/, makes it reasonably clear that it is in the business of collecting debts. The home page proudly proclaims they are a

"… financial services company in the debt recovery business, helping alleviate our customers from distressed debt. We are experts at debt purchasing and debt collection."

The evidence offered in support of its motion for summary judgment, limited at this date to a 2-page declaration by the CEO of AFS, namely Anthony Stile, does not deny that the AFS is in the business of collection of debts, as well as debt buying.

The simple language of 15 U.S.C. ¶ 1692a(6), the Federal Fair Debt Collection Practices Act, makes it reasonably clear that AFS is a "debt collector" within the meaning of the Act. The dunning letter dated May 7 2014 to the Plaintiff on Dynamic letterhead states that the "Current Owner is Accelerated Financial Solutions." Exhibit "J" page 1. This suggests exactly what it seems, that AFS is a debt collector and undertaking to collect the debt.

Plaintiff is informed and believes that the law firm *Sessions, Fishman, Nathan & Isreal* represents each of the defendants in connection with FDCPA matters.

This raises an *alter ego* issue that should be explored.

AFS, through the Dynamic letter dated May 7, 2014, made thinly veiled threats about Plaintiff's credit report (Plaintiff's Exhibit "J" .

The text on the back side of the dunning letter (Plaintiff's Exhibit "J") makes an explicit threat to have a negative mark entered on Plaintiff's credit report, unless she complied with certain conditions placed on her by the letter. As stated above, AFS via Dynamic suggests it

---

[2] 15 U.S.C. § 1692a(6).

could place a negative item on the Plaintiff's <u>credit report</u> notwithstanding that the limitations period of 7 years <u>had expired</u>.[3]

The text appearing at the top of the back side of Exhibit "J" states:

" … you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations. But we will not submit a negative credit report to a credit reporting agency about this credit obligation until the expiration of the time period described on the front of this letter."[4]

Turning their account over to Dynamic to collect suggests that AFS was aware of, and affirmed, Dynamic's culture of enthusiastically collecting time-barred debts. As Plaintiff's Memorandum in Opposition to Dynamic's motion, incorporated herein by reference, this language is found on Dynamic's web site:

"One significant advantage of using a full service collection agency like Dynamic Recovery Solutions is the agency's reporting capability with the Credit Bureaus."

"Reporting delinquent accounts to Credit Agencies heightens the incentive for a consumer to seek a resolution. In addition, it may legitimize the debt in the eyes of the consumer as well as create the opportunity for the consumer to identify any unpaid bills that may have unknowingly fallen by the wayside."

And Dynamic brags about collecting accounts that reach all the way back to the year 2000 - "Dynamic Recovery Solutions is experienced in collecting late stage debt, with delinquencies dating back to the year 2000."[5] And on its Linkedin page may be found Dynamics boasting of collecting "Out of Statute Debt Collection" and "Off Bureau Debt Collection."

The AFS web site has a section called "FAQ."

The "Q"s given as examples appear to be questions consumers who have been contacted by AFS may ask, and the AFS answer:

Q. "Why did it take so long for you to contact me in reference to my account?"

A. "Often times, many individuals fail to contact their creditors when they make changes to their contact information (Change of Address, Telephone number, etc). We have a large number of "skip tracing" tools available to us that allow us to attempt to correct your contact information."

---

[3] Cal. Civ. Code § 1785.13a(5) and (7). The credit report issue is a recently identified issue that will appear in an Amended Complaint by the Plaintiff.
[4] The front side of the dunning letter is unclear about what time period the back side is referring to. The period could be the time from May 7 to June 15, 2014, or 4 payments starting on June 15, or some other time period.
[5] http://dynamicrecovery.com/services

It is remarkable that this advice, given on Defendant's web site in response to a hypothetical question from a consumer from whom AFS is trying to collect a debt, while describing things that may extend the time it takes for AFS to contact, and in answer to the question "<u>Why did it take so long</u>" utterly fails to explain the significance of the statute of limitations on collection of a debt.

Q. "I need to increase my credit score. Will paying this help?"

"A. Each individual's credit report is different, and each credit report facility examines varying factors to determine your individual credit score. In general, many factors that bring your credit score down are related directly to delinquent repayment of debts. You should contact your credit-reporting agency directly for a better understanding of your situation and what steps you can take to improve it."

Like the advice cited on Defendant AFS' web site about why it "took so long", it is remarkable that this advice about credit reports, given on Defendant's web site in response to a hypothetical question from a consumer from whom AFS is trying to collect a debt, utterly fails to explain the significance of the <u>statute of limitations on posting items on the consumer's credit report.</u>

While technically it could be argued that there is no legal requirement for AFS to be honest, and not misleading, on its web site, the language clearly expresses the AFS cavalier approach to debtor's rights and AFS' callous disregard of the intent of both the Federal Fair Debt Collection Practices Act, and the California equivalent (The Rosenthal Fair Debt Collection Practices Act - Civ. Code § 1788(a) et seq.

## II. IS AFS A DEBT "BUYER"?

In addition to causes of action under the state and federal fair debt collection practice statutes, the Plaintiff has included a cause of action for violation of the California Fair Debt Buyer Practices Act, Cal.Civ. Code § 1788.50 et seq., defines a debut buyer in similar terms, including " … a person or entity that is regularly engaged in the business of purchasing

charged-off consumer debt for collection purposes …" This act became effective as of Jan. 1 2014, approximately two weeks before AFS purchased the debt.[6]

The AFS act of purchasing the debt and then attempting to collect it indirectly for its own purposes, by employing a "third party," to wit, Dynamic, brings it precisely within the definition of the California Fair Debt Buying Practices Act. Cal.Civ. Code § 1788.50.

Specifically the California FDBPA, at Civ. Code § 1788(a)(1) defines a Debt Buyer;

> (a) As used in this title: "(1) "Debt buyer" means a person or entity that is regularly engaged in the business of purchasing charged-off consumer debt for collection purposes, whether it collects the debt itself, hires a third party for collection, or hires an attorney-at-law for collection litigation."

It appears that AFS fits into the debt buyer status.

### III. ENTRY ON CREDIT REPORT

Plaintiff will move to amend her complaint to allege an additional violations.

Ominously, the 6 pages produced by Dynamic in response to Plaintiff's request for production of documents (Plaintiff's Exh. I) , at page 4, appears this text: "02/04/2014 Equifax Credit – old information." This language is repeated on page i-6 (top line). Plaintiff is uncertain whether this means Dynamic entered something on her credit report, or made an inquiry. However, regardless of whether it was an entry or a inquiry, it may have damaged her credit rating. This is still under investigation.

Presumably, many alleged debts going back that far have outlived their respective state statutes of limitations. The above statement from the web site seems to reveal their attitude about time-barred debt. Which may explain why Dynamic sent a dunning letter for a debt whose limitations period had long since expired. And explains why Dynamic employs a "Head of Business Development who advertises his services as including debts for which the statutes of limitations have expired.[7]

### IV. WHAT DID AFS KNOW AND WHEN DID THEY KNOW IT?

---

[6] AFS purchased the debt on Jan. 15, 2014, according to the declaration of Anthony Stile filed in support of the AFS motion for summary judgment.
[7] A Google search for Dynamic also identifies Dynamic's "head of Business Development and Client Relations" as William Lowery. (Exh. "N). On his Linkedin web page he lists his specialties, among which he lists "Out of Statute Debt," and "Off Bureau Debt." Plaintiff will depose this witness.

The question arises, what exactly did AFS know, and when did AFS know it, or not know it? Or, put another way, what information about the Plaintiff's matter did defendant Consumer passed on to AFS, and in turn AFS passed on to Dynamic? The single page account history the Defendant Consumer provided to Plaintiff in response to Plaintiff's request for production of documents (Exh. C) contains an entry dated ?/4?/2010[8] with the text "Changed status Code – C&D – Cease & Desist." Presumably, the status "C&D" means, or plausibly should mean, that the account is closed and not to be transferred or sold to another debt collector down the line. But this status information on Consumer's exhibit does not appear anywhere in the 2 page Stiles declaration. Nor did Dynamic CEO Mike Porter's declaration identify this information, which suggests that he, like Stile, was either uninformed about it, or he did not consider it important.

Hence, the questions arise, 1) did Consumer neglect to pass this status, or the *reason* for the C&D status, on to the next debt collectors (Accelerated and Dynamic)? 2) or did Consumer pass it on but the information was disregarded by the two other debt collectors in the chain? Plaintiff will argue that Consumer had a duty to pass it on, and failed to do so, and that AFS had a duty to inquire about it from Consumer, and in turn a duty to pass it on to Dynamic, and all three defendants had a duty to process the information properly within the constraints of the CDCPA and the FDBPA. At least one of them failed this duty.[9]

### V. DID AFS "COMMUNICATE" WITH THE PLAINTIFF?

AFS argues that it " … never sent any written communications to Plaintiff regarding this account." Plaintiff today has no reason to dispute this. But, from this we are presumably supposed to find that regardless of its status as a collector or a buyer, it did not do any act in violation of either the California FDCPA, the Federal FDCPA, or the California FDBPA.

Even if true, it misses the point; it was an attempt, by means of placement with a third party, to collect a debt. Hence, the conduct of the "third party" is, for legal purposes, the act of AFS, and AFS is a debt buyer within the meaning of the CFDBPA. As the CEO of AFS, Anthony Stile himself admitted in his declaration, AFS apparently did not "give" or "sell" the account to Dynamic (Declaration of Anthony Stile filed in support of AFS motion for summary

---

[8] Other than the year, the date is obscured on the document.

judgment, but merely "placed" it with Dynamic Recovery Solutions "for collection." Declaration signed May 1, 2015, page 2, lines 11-12 (paragraph # 6). The obvious meaning of this is that Dynamic was to collect the debt for the benefit of AFS, meaning that AFS would doubtless receive at least some of the proceeds from Dynamic's collection efforts.

As an entity falling within the definition of a debt buyer under the CFDBPA, it is subject to a plethora of requirements for communication with a debtor. It makes no difference that AFS used Dynamic to do the communicating. These requirements are catalogued throughout the Act.

## VI. THE "BONA FIDE ERROR" DEFENSE

In its memorandum filed in support of its motion for summary judgment AFS, through the declaration filed by its CEO Anthony Stile, addresses the FDCPA issue, and brushes it off by asserting that in order for the Plaintiff to state a cause of action against AFS based on that statute it must be shown that the Defendant had "actual knowledge" of the critical information, such as the facts that the Debtor Plaintiff had directed that all communications to her legal counsel, the legal status of the alleged debt, that the Plaintiff disputed the debt, and the expiration of the credit reporting statute, when it "placed" the account with Defendant Dynamic Recovery Solutions.

The Defendant's memorandum in support of its motion for summary judgment cites 5 cases, only one of which is within the 9th Circuit, dated 2009 (*Offril v. J.C. Penny*), and that case has been subsequently ignored by other 9th Circuit opinions.

This is, in effect, the "innocent mistake" or "bona fide error" defense based on 15 U.S.C. § 1692k(c).

The Act provides, *inter alia*:

> (c) Intent
> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. (emphasis added).

---

[9] Which poses a question – does the law firm *Sessions, Fishman, Nathan & Isreal,* which appears to represent all three defendants – have a conflict of interest and should recuse itself from one , or the other?

Hence, to be credible, the bona fide error defense requires that the debt collector have and actually execute <u>reasonable procedures</u> to <u>prevent errors</u> such as those alleged herein by the Plaintiff; it does not require the Plaintiff to prove the entity had actual knowledge.

### The "actual knowledge" test has been rejected by the 9th Circuit

The requirement that a FDCPA claim requires the debt collector's knowing and intentional conduct is, quite simply, not the law in the 9th Circuit.

The 9th Circuit in *Clark v. Capital Credit & Collection Serv.*, 460 F.3d 1162 (9th Cir., 2006) stated, *inter alia*, "Requiring a violation of § 1692e to be knowing or intentional needlessly renders superfluous § 1692k(c)."

Further, the court in *Reichert v. National Credit Systems, Inc.* 531 F.3d 1002 (9th Cir. 2008) opinion states:

> "We have held that a debt collector failed to meet its burden under the defense when it did not produce evidence of 'reasonable preventive procedures' aimed at preventing the error."

And the court in *Engelen v. Erin Capital Mgmt., LLC* (9th Cir., 2013) states:

> "The bona fide error defense is a "narrow exception to strict liability under the FDCPA," so defendants bear the burden of proof at summary judgment. Citing *Clark v. Capital Credit & Collection Servs., Inc.,* 460 F.3d 1162, 1177 (9th Cir. 2006).

*Engelen* continues;

> "Because Rosen & Loeb failed to meet its burden of proof as to its entire set of procedures under the bona fide error defense, it was not entitled to summary judgment. The evidence presented is such that "a reasonable jury could return a verdict" for Engelen."

An examination of the evidence offered by Dynamic to date to establish and follow a reasonable procedure to prevent the mistakes alleged by the Plaintiff in her complaint demonstrates it is devoid of any relevant or material information that is required for the "innocent mistake" or "bona fide error" defense. The only evidentiary document offered in support of their motion is the declaration by the Dynamic CEO Mike Porter, which does not include or even suggest that there are any reasonable procedures to help them avoid the mistakes alleged by the Plaintiff.

## VII. BURDEN OF PROOF

Defendant's memorandum appears to place the *burden of proof* on the *consumer* to prove that the debt collector had "actual knowledge" or intent of the critical information. The Dynamic brief says this is the law in the 9th Circuit. The brief cites two cases, neither of which is a 9th circuit case.

This is, quite simply, not the law in the 9th Circuit.

The 9th Circuit has pronounced that the innocent mistake defense is an "affirmative" defense for which the burden is on the debt collector. *Reichert v. National Credit Systems, Inc*. 531 F.3d 1002 (9th Cir. 2008). Further, the *Reichert* opinion states "The defense requires the defendant to show that it maintains procedures to avoid error." *Reichert*, at 1006.

In fact, the showing as of this date is so inadequate that not only should the court deny the defendant's motion for summary judgment, the court could *sua sponte* simply grant summary judgment for the Plaintiff.

## VIII. SUMMARY

In connection with FDCPA suits the 9th Circuit deliberately adopts a presumption in favor of the debtor:

"Because the FDCPA . . . is a remedial statute, it should be construed liberally in favor of the consumer."[10]

This is carried over into construing any motion for summary judgment:

The court must consider the evidentiary record in the light most favorable to the non-moving party and draw all reasonable inferences in their favor. *Mueller v. Auker*, 576 F.3d 979 (9th Cir., 2009).

What little factual information there is currently available to the Plaintiff suggests that other material and relevant evidence may be produced in discovery. Plaintiff requests that the court continue the hearing on this motion to follow the Plaintiff's timely discovery.

A document alluded to by Mr. Stile in his Declaration of Amthony Stile is something called "collection services agreement."

The Plaintiff requested production of documents from AFS on April 14. Document request no. 3 requests:

---

[10] *Clark v. Capital Credit & Collection Serv.*, at 1176.

3. Any agreements, contracts, or other memoranda in effect between you and the source from which you purchased or otherwise obtained any information in connection with the plaintiff.

This request would certainly include the "collection services agreement" referred to by Mr. Stile. As of this date, AFS has not produced this document. It may contain evidence not only of the relationship between the defendants but information about what information related to the alleged debt was conveyed from the source of the account from AFS to Defendant Dynamic. Such evidence may tend to exculpate or inculpate the Defendant AFS, or respectively the other defendants, in connection with the FDCPA and the FDBPA. It may also indicate what, if any, boilerplate representations are made by the source when the account is purchased by AFS or "placed" with Dynamic.  A question arises with regard to the extent to which AFS reliance on representations of the source (currently this appears to be Defendant Consumer Recovery Associates) is reasonable; a debt collector's reliance on the creditor's representations, without more, is unreasonable. *Elde v. Colltech* 987 F. Supp. 2d 951 (D. Minn. 2013).

"In *Reichert,* we held that "[t]he fact that the creditor provided accurate information in the past cannot, in and of itself, establish that reliance in the present case was reasonable and act as a substitute for the maintenance of adequate procedures to avoid future mistakes." *McCollough v. Johnson* 637 F.3d 939 (9th Cir. 2011).

Whether reliance on a provider is reasonable required some measure of verification. *Canham v. Fair Collection & Outsourcing*, _ (N.D. Ill. 2014).

The fact that defendants have been repeatedly sued based on DFCPA[11] gives pause to why AFS relied on skimpy information from the source of the account (Consumer) and why Dynamic did the same thing; presumably a record such as appears in the record would give one pause about blindly accepting account information without any actual attempt to look into the legal status of the debt.

Dated: May 14 2014

_____/S/_ Morgan D. King_____

MORGAN D. KING,
Attorney for Plaintiff Nancy Finley
Law Offices of Morgan King
P.O. Box 2951
Dublin, CA 94568

---

[11] Plaintiff will ask that the Court take Judicial Notice of a number of adjudications in the public record.

- 11 –